UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RAH COLOR TECHNOLOGIES LLC,

                Plaintiff,

vs.

                                    **Civil Case No.: 1:17-CV-06813**

XEROX CORPORATION,

                Defendant.

## XEROX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CHANGE VENUE

**WARD GREENBERG HELLER & REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................................... 4

BACKGROUND ................................................................................................................................ 2

ARGUMENT .................................................................................................................................... 6

THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA .................. 6

    A. Plaintiff's Choice of Forum Is Not Entitled to Deference ................................................. 8

    B. The Absence of an Illinois Situs of Material Events & Lack of Ease of Access to Sources of Proof in Illinois Both Strongly Favor Transfer .............................................................. 9

    C. Convenience of the Parties and Witnesses Strongly Favors Transfer ............................ 10

    D. The Public Interest Factors Strongly Favor Transfer ..................................................... 12

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958 (N.D. Ill. 2000).......................................... 7
*Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc.* 55 F. Supp. 2d 871 (N.D. Ill. 1999)........... 8
*Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613 (7th Cir. 2009) ........................................... 7
*BillingNetwork Patent, Inc. v. Modernizing Med., Inc.*, 2017 U.S. Dist. LEXIS
   183577 (N.D. Ill. Nov. 6, 2017) ................................................................................................. 6
*Body Sci. LLC v. Boston Sci. Corp.,* 846 F. Supp. 2d 980 (N.D. Ill. 2012)........................ 8, 12, 14
*Braddock v. Jolie*, 2012 U.S. Dist. LEXIS 83598 (N.D. Ill. June 15, 2012) ................................. 8
*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ................................................. 7, 13
*Craik v. Boeing Co.*, 37 F. Supp. 3d 954 (N.D. Ill. 2013) ............................................................ 13
*Dwyer Instruments, Inc. v. Wal-Mart.com United States, LLC*, 2017 U.S. Dist.
   LEXIS 200566 (N.D. Ind. Dec. 6, 2017) ................................................................................... 7
*Dwyer Instruments, Inc. v. Wal-Mart.com United States, LLC*, 2017 U.S. Dist.
   LEXIS 200566 (N.D. Ind. Dec. 6, 2017). .................................................................................. 9
*Heil Co. v. Curotto Can Co.,* 2004 U.S. Dist. LEXIS 5183 (N.D. Ill. Mar. 30, 2004)................. 13
*In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017)............................................................................. 6
*In re Genentech, Inc*., 566 F.3d 1338 (Fed. Cir. 2009).................................................................. 9
*Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049 (N.D. Ill. 2012).............................................. 11
*Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942 (N.D. Ill. 2017) .................................................... 10
*Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836 (N.D. Ill. 2009) .......... 12
*RAH Color Techs., LLC, v. Quad/Graphics, Inc*., 2018 U.S. Dist. LEXIS
   6825 (N.D. Ill. Jan. 16, 2018)............................................................................................ passim
*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973
   (7th Cir. 2010) ...................................................................................................................... 7, 12
*Rorah v. Petersen Health Care*, 2013 U.S. Dist. LEXIS 94536 (N.D. Ill. July 8, 2013) ............. 11
*Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055 (N.D. Ill. 2015).......................................... 11
*Swingaway Sports Prods. v. Escalade, Inc.*, 2012 U.S. Dist. LEXIS 57556
   (N.D. Ill. Apr. 23, 2012)............................................................................................................. 9
*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) ............................. 6
*Weber-Stephen Prods., LLC v. Char-Broil, LLC*, 2016 U.S. Dist. LEXIS 140173
   (N.D. Ill. Oct. 5, 2016) .............................................................................................................. 8
*Weis v. Kimsaprincess Inc.*, 2017 U.S. Dist. LEXIS 178879 (N.D. Ill. Oct. 30, 2017) ................. 8

**Statutes**

28 U.S.C. § 1400(b) ....................................................................................................................... 6
28 U.S.C. § 1404(a) ....................................................................................................................... 7

**PRELIMINARY STATEMENT**

The Northern District of Illinois has no meaningful connection to this lawsuit. Plaintiff RAH Color Technologies, LLC ("RAHCT") is a Virginia company whose sole member is a Virginia resident. RAHCT alleges essentially that software used in the printing industry and sold by Xerox, a New York corporation, infringes certain of its patents. Over 96% of the key software implicated by the claims and sold by Xerox was supplied to Xerox by Electronics for Imaging, Inc. ("EFI"), headquartered in Fremont, California (in the Northern District of California). In fact, EFI has just commenced an action in the Northern District of California against RAHCT seeking a declaration that several of the patents-in-suit asserted here are not infringed by the same EFI software accused in this case. None of the software, either the 96+% supplied by EFI, or the remaining ~4% at issue – some of which also was supplied to Xerox by third parties – was developed in Illinois. All told, Xerox is not aware of any evidence – documents, non-party or party witnesses – located within this district that is relevant to the claims asserted by RAH.

Because it lacks any connection to Illinois, this case should be transferred pursuant to 28 U.S.C. § 1404(a) to the Northern District of California (where venue also is proper). Both the convenience and public interest factors strongly favor transfer; neither plaintiff nor Xerox has a meaningful link to the Northern District of Illinois, the witnesses, documents, and relevant information related to the critical software product at issue are located within the custody and control of EFI in California, and judicial economy will best be served by transfer to the same court that is considering the very patent infringement allegations at issue in this case as they concern the EFI-supplied software.

## BACKGROUND

Contained within plaintiff's 408-paragraph amended complaint are allegations that certain Xerox products infringe eight patents (the "Patents-in-Suit") held by RAHCT. (*E.g.,* Dkt. 21 at ¶ 1). The Patents-in-Suit generally are directed to the concept of color management for printed materials. (Post Decl. ¶ 3). The term "color management" describes a variety of expert-level tools (much more than simply selecting a color for printing) that permit a user to create, edit and maintain sophisticated color profiles and facilitate printing in precise, consistent colors regardless of the printer used. (*Id.* at ¶ 4). For example, color management tools might be used to generate matching colors over many printers or to match colors from one printer to another. Color management typically is implemented through software applications. (*Id.*).

RAHCT contends that certain Xerox products perform color management in ways that infringe the Patents-in-Suit. (*See generally* Dkt. 21). Although in some counts, RAHCT references Xerox printers, the critical component of every infringement claim made by RAHCT is software running on a computer that is physically separate from the printer, commonly called a "print server" (and sometimes alternately called a digital front end or "DFE"). (Post Decl. ¶ 5).

A print server essentially is the job manager for printing; a print server will, for example, tell the printer how a print job fits into the queue (print job priority), the kind of paper to use, and whether the output should be bound. (*Id.*). Most important, however, the print server tells the printer how the job should look – the print server converts user input data, such as a .pdf or Word document, into a set of instructions that the printer can use to make the desired print in terms of, among other things, print size, page coverage and color. (*Id.*).  If the print server includes color management functionality, in many cases that functionality is implemented through a separate software module that a customer elects to purchase. (*Id.*).  Throughout the complaint, RAHCT identifies the accused print servers by name – specifically, the EFI Fiery print server (referred to

in the amended complaint as the "EX" print server), the CX print server, the FreeFlow print server and the FreeFlow Core (on Premise) and FreeFlow Core Cloud print servers. (Dkt. 21 at Counts I-XXXII).

Electronics for Imaging, Inc. (commonly known as EFI), located in Fremont California, has developed leading edge technologies for the production of documents, signage, packaging and other printed products. (http://www.efi.com/about-efi/, last visited 3.16.18.)  Its print servers and associated software are dominant in the industry, and it advertises itself as "the world standard for color across every single [print] category." (http://www.efi.com/about-efi/who-is-efi/, last visited 3.16.18.)  EFI supplies the Fiery print server to Xerox. (Post Decl. ¶ 8).  In fact, 96.3% of print servers with color management capabilities sold by Xerox since March 2014 (the date RAHCT alleges it first notified Xerox of certain of the Patents-in-Suit (Dkt. 21, ¶ 27)), have been supplied to Xerox by EFI in the form of the EFI Fiery print server. (Post Decl. at ¶ 8).  To Xerox's knowledge, information related to the EFI Fiery print server resides in California; Xerox is aware of no documents or witnesses in Illinois relevant to the EFI Fiery print server. (*Id.* at ¶¶ 8-9).

The CX print servers accused by RAHCT in the complaint were supplied to Xerox by the Creo unit (located in Vancouver, British Columbia, Canada) of Eastman Kodak Company (located in Rochester, NY). (*Id.* at ¶ 10).[1]  CX print server sales make up a very small percentage of Xerox's sales of color management-capable print servers – less than 1%.  (*Id.*). Like the EFI Fiery print server, the CX print server was not developed by Xerox and has no relationship to Illinois (except perhaps to the extent that a CX print server might have been sold to a Xerox customer in Illinois). (*Id.* at ¶ 10).

---

[1] The CX print server offered similar functionality to the EFI Fiery print server, and simply was an alternative customer choice. (Post Decl. ¶ 6). Xerox no longer sells the CX print server. (*Id.* at ¶ 10).

3

The FreeFlow print server accused by RAHCT in the amended complaint was developed by Xerox or, in collaboration with Xerox, by another non-party to this action, HCL Technologies ("HCL"), in Webster, New York, El Segundo California and India. (*Id.* at ¶ 12). In 2017, Xerox sold the FreeFlow print server product line to EFI, and EFI now supplies Xerox with both the FreeFlow print server and the EFI Fiery (EX) print server. (*Id.* at ¶ 13).

The FreeFlow Core print server product line is owned by Xerox and was developed by Xerox or in collaboration with Xerox, by HCL, in Webster, El Segundo and India.[2] (*Id.* at ¶ 12). Xerox sells FreeFlow Core in two configurations: an "on-premises" version, which is installed, configured and run by the customer as part of the digital front end, and the Cloud version, which is hosted and managed by Xerox. (*Id.* at ¶ 7). Color management capabilities are not included in the base offering of either configuration; instead, a FreeFlow Core customer who wants color management functionality must purchase an additional module or advanced software (in the "on-premises" version, sold as the Advanced Prepress module, and in the Cloud version as FreeFlow Core Cloud Advanced configuration). (*Id.*). To date, Xerox has sold only a single unit of a FreeFlow Core "on-premises" print server with the Advanced Prepress module, and none of the FreeFlow Core Cloud Advanced configuration. (*Id.* at ¶ 14). In total, FreeFlow print servers, and FreeFlow Core and FreeFlow Core Cloud print servers with color management capabilities, comprise 3.7% of Xerox's sales of print servers with color management capabilities. (*Id.* at ¶ 11). And, there is no relevant documentation or evidence related to these print servers in Illinois; any documentation or witnesses are in Webster, New York, El Segundo, California, India or (with respect to the EFI-owned FreeFlow print servers) Fremont, California. (*Id.* at ¶ 9, 12).

---

[2] FreeFlow Core was not part of the technology sale to EFI. (Post Decl. ¶¶ 13-14).

4

To be sure, RAHCT has named products or technology in the amended complaint that are not print servers, and which it contends are involved in the allegedly infringing activity. For example, RAHCT references Xerox's "Automated Color Quality Suite" ("ACQS") and "Xerox Confident Color Technology." (*See, e.g.* Dkt. 21 at Counts XVI, XVIII, XXVI). But these are marketing terms for color generation technology that include a combination of color management software, a print server and a press. (Post Decl. ¶ 18). Indeed, plaintiffs allege in the amended complaint that ACQS and Confident Color Technology must be used in combination with a print server (they specifically identify FreeFlow Core Cloud or "other print servers and software"). (*See e.g.* Dkt. 21, ¶¶ 212, 214, 299, 305, 312).

Likewise, RAHCT references Xerox MatchAssure (*Id.* at Counts XXXIII-XXXVI) and Xerox IntegratedPlus (Dkt. 21. at Count XXXVII). These software products can perform color matching or color profiling on multiple printers to keep them in spec or to ensure they print consistent colors. (Post Decl. ¶ 15). However, a printer cannot print in a color generated by MatchAssure or IntegratedPlus unless the color data is routed to a print server, which then communicates the color modification instructions to the printer. (*Id.*). In fact, RAHCT alleges that MatchAssure and IntegratedPlus are used in combination with a print server. (*See* Dkt. 21 at ¶ 364 (alleging "profiles created by MatchAssure are forwarded to a central print server for use with printers and presses connected/networked to the print server"); ¶ 399 (alleging that the FreeFlow Core print server "provides the software platform that IntegratedPlus runs on")).

MatchAssure was developed by Xerox in Webster, New York. (Post Decl. ¶ 16). IntegratedPlus is a web-based system that includes three separate software components with color management capability. (*Id.* at ¶ 17). All three color management components were developed for Xerox by yet additional non-parties to this action: CGS Publishing Technologies International,

5

LLC (a German company with its U.S. base of operations in Minneapolis, Minnesota), Color Management Intelligence (located in the Netherlands) and X-Rite, Inc. (located in Grand Rapids, Michigan). (*Id*). To Xerox's knowledge, neither MatchAssure nor IntegratedPlus, nor any of the color management components of IntegratedPlus are developed or tested in, or indeed, have any other connection with Illinois. (*Id.* at ¶ 17).

Inasmuch as more than 96% of Xerox's unit sales of the color management-capable print servers are EFI Fiery print servers, supplied by EFI to Xerox, this case fundamentally is about EFI products. Although FreeFlow print servers and FreeFlow Core print servers, as well as MatchAssure and IntegratedPlus are mentioned frequently throughout the amended complaint, these software products – especially FreeFlow Core print servers – are, as a practical matter, virtual non-players in this litigation.

## ARGUMENT

### THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

For purposes of a patent infringement action, venue is appropriate in a judicial district "where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). As a New York corporation, Xerox does not reside in Illinois. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017) (domestic corporation resides "only in its [s]tate of incorporation for purposes of the patent venue statute.") Therefore, proper venue under § 1400(b) requires, in addition to alleged acts of infringement, that the defendant satisfy three conditions: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *BillingNetwork Patent, Inc. v. Modernizing Med., Inc.*, 2017 U.S. Dist. LEXIS 183577, at *5 (N.D. Ill. Nov. 6, 2017) (quoting *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)). As discussed in the accompanying declaration, Xerox maintains a physical

location in the Northern District of California and regularly conducts business there. (Calabria Decl. ¶ 2).  Thus, venue is proper in the Northern District of California.

Of course, venue may be proper in several districts. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). In such a case, "a district court may transfer any civil action to any other district or division where it might have been brought" after considering the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). Section 1404(a) allows for a "flexible and individualized" analysis of the transfer application, and provides "considerable discretion" in the transferor court. *Dwyer Instruments, Inc. v. Wal-Mart.com United States, LLC*, 2017 U.S. Dist. LEXIS 200566, at *4-5 (N.D. Ind. Dec. 6, 2017). The threshold of convenience necessary for a § 1404(a) transfer is less than the showing necessary for a *forum non conveniens* dismissal. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

Courts in the Seventh Circuit consider several factors when determining the "convenience of parties and witnesses," including (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010).  In addition to "convenience of the parties and witnesses," courts also evaluate "interest of justice factors," including the congestion of the respective court dockets, prospects of a speedy trial, the courts' familiarity with the applicable law and the relationship of each community to the occurrence at issue in the case. *See RAH Color Techs., LLC, v. Quad/Graphics, Inc*., 2018 U.S. Dist. LEXIS 6825, at *15 (N.D. Ill. Jan. 16, 2018); *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 997 (N.D. Ill. 2012).  As discussed below, these factors overwhelmingly favor transfer to the Northern District of California.

### A. *Plaintiff's Choice of Forum Is Not Entitled to Deference*

Although courts typically give deference to a plaintiff's choice of forum, such deference is unwarranted "when the plaintiff's chosen forum is not the plaintiff's home forum or has a relatively weak connection with the operative facts" at issue in the litigation. *Body Sci. LLC v. Boston Sci. Corp.,* 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012); *see also Braddock v. Jolie*, 2012 U.S. Dist. LEXIS 83598, at *3 (N.D. Ill. June 15, 2012) (giving less weight to plaintiff's choice of Illinois as a forum because plaintiff did not reside in Illinois and the majority of material events did not occur there). RAHCT is a Virginia LLC with a single office in Alexandria Virginia (Dkt. 21 at ¶ 1). In fact, plaintiff's only known connection to this District is its counsel, which is not a consideration when evaluating a transfer of venue. *See Body Sci. LLC,* 846 F. Supp. 2d at 993. In sum, as this Court previously held, RAHCT has virtually no connection to the Northern District of Illinois. *See RAH Color Techs., LLC*, 2018 U.S. Dist. LEXIS 6825, at *9.

RAHCT may argue that Xerox has sold infringing goods in Illinois, thus justifying venue here. (Dkt. 21 at ¶¶ 6-11). However, "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Weis v. Kimsaprincess Inc.*, 2017 U.S. Dist. LEXIS 178879, at *8 (N.D. Ill. Oct. 30, 2017) (quoting *Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc.* 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999)). In fact, selling goods within the chosen venue constitutes a "weak" connection where the infringing product is "sold nationwide, so the alleged infringement is occurring in several fora across the country." *Weber-Stephen Prods., LLC v. Char-Broil, LLC*, 2016 U.S. Dist. LEXIS 140173, at *4 (N.D. Ill. Oct. 5, 2016). Not surprisingly, Xerox has facilities throughout the United States and sells its products, including print servers and the other associated, allegedly infringing software, throughout the

country. (Calibri Decl. ¶ 1-2; Dkt. 30, ¶ 3). Under these circumstances, RAH's choice of forum should not be given deference, and this factor weighs in favor of transfer.

> **B.** *The Absence of an Illinois Situs of Material Events & Lack of Ease of Access to Sources of Proof in Illinois Both Strongly Favor Transfer*

In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer" and thus, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Swingaway Sports Prods. v. Escalade, Inc.*, 2012 U.S. Dist. LEXIS 57556, at *7 (N.D. Ill. Apr. 23, 2012) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *RAH Color Techs., LLC v. Quad/Graphics, Inc.*, 2018 U.S. Dist. LEXIS 6825, at *12-13 ("courts in this district look to the location of the defendants' activities and physical documents when addressing this issue in patent cases"). Similarly, where plaintiff has an office outside the forum, and has neither documentary evidence nor knowledgeable witnesses within the forum, this factor favors transfer. *Swingaway Sports Prods.*, 2012 U.S. Dist. LEXIS 57556 at *7 ("Plaintiff's evidence, to the extent relevant, is located in Georgia. Nothing is in Illinois. Therefore, relative ease of access to proof favors transfer."). This is particularly true where "the decisions and events behind Defendants' alleged infringement could not have occurred in this District in light of Defendants' complete lack of connection to the District aside from its sales of the accused product." *Dwyer Instruments, Inc. v. Wal-Mart.com United States, LLC*, 2017 U.S. Dist. LEXIS 200566, at *8 (N.D. Ind. Dec. 6, 2017).

Here, there is not a single event or source of proof in Illinois. (Post Decl. ¶¶ 9-10, 12, 16-17). Fundamentally RAHCT's case is against the EFI Fiery print server. EFI, the documents relevant to the EFI Fiery print server, and the associated witnesses are all located in California, and EFI now has brought an action against RAHCT in the Northern District of California, seeking a declaration of non-infringement with respect to the very same EFI software accused in this case.

9

(Ward Decl. Ex. A). Further, the CX print server, the FreeFlow print server, the FreeFlow Core and FreeFlow Core Cloud print servers, MatchAssure and IntegratedPlus, all referenced by RAHCT in the amended complaint, have no evidentiary relationship to this District. The CX print server was developed by Creo, located in Vancouver, British Columbia, Canada, and is supplied to Xerox by Eastman Kodak Company in Rochester, NY. The FreeFlow print server and the FreeFlow Core and FreeFlow Core Cloud print servers were developed in Webster, New York, El Segundo, California and India. MatchAssure also was developed in Webster, El Segundo and India. German, Dutch and Michigan companies supplied Xerox with the color management capabilities of IntegratedPlus. Documents and witnesses related to the development of these products are in multiple locations – including the Northern District of California relative to EFI's current ownership of the FreeFlow print server – but none are in Illinois. (*See* Post Decl. ¶¶ 9-10, 12, 16-17).

In the absence of documents or witnesses in Illinois, and the likely presence of EFI witnesses and documents in the Northern District of California or elsewhere within the state (e.g., El Segundo, California), this factor – the situs of material events – favors transfer to EFI's home district in California, given EFI's presence there and EFI's action against RAHCT venued there. It stands to reason that the Northern District of California will have a much greater relationship to the issues in this case than Illinois.

### C. Convenience of the Parties and Witnesses Strongly Favors Transfer

"Convenience to the witnesses is the factor often viewed as having the most weight in determining whether to transfer venue." *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 957 (N.D. Ill. 2017). Indeed:

> when evaluating the convenience of the witnesses and the parties, 'the court may consider the following factors: the number of

10

>potential witnesses located in the transferor and transferee districts; the expense of transportation and the length of time the witnesses will be absent from their jobs; the nature, quality, and indispensability of the witnesses' testimony; and whether the witnesses can be compelled to testify.

*RAH Color Techs., LLC,* 2018 U.S. Dist. LEXIS 6825 at *13 (quoting *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012)). Although employee-witnesses should be given consideration, "the convenience of non-party witnesses should be given more consideration than party witnesses. *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015); *Rorah v. Petersen Health Care*, 2013 U.S. Dist. LEXIS 94536, at *10 (N.D. Ill. July 8, 2013) ("the convenience of employee witnesses is given less weight than the convenience of non-party witnesses."). Indeed, this Court previously held that even three non-party witnesses outside the district, in conjunction with defendants' residence outside the district, causes this factor to weigh in favor of transfer. *See RAH Color Techs., LLC*, 2018 U.S. Dist. LEXIS 6825 at * 14.

EFI, which supplied the Fiery Print Servers – the critical software at issue in the case and supplier of the overwhelming majority of the print servers sold by Xerox – obviously will have numerous witnesses concerning the development of its products. And now that it owns the FreeFlow print server, its witnesses are relevant to RAHCT's claims against those products as well. (Post Decl. ¶ 13). These witnesses are non-parties to this action, and therefore the Court should transfer to EFI's home district to accommodate their convenience, especially because it has sued RAHCT in the Northern District of California on several of the patents asserted here.

Further, there are abundant non-party witnesses associated with the other products cited by RAHCT and supplied to Xerox by non-parties, such as Creo, Kodak, HCL, CGS, CMI and X-Rite for whom California may be just as (in)convenient as Illinois. (*Id.* at ¶ 10, 12, 16-17). Finally, Xerox's employed witnesses – who as parties are less important than non-party witnesses when

evaluating transfer of venue – are located in Webster, New York and El Segundo, California.[3] (Post Decl. ¶ 12). A critical fact, however, is that there are no witnesses in Illinois, either non-party or party witnesses, that would otherwise tip this factor against transfer. In sum, the convenience of the EFI non-party witnesses and the other supplier non-party witnesses outweighs the convenience of this venue to plaintiff, the presence of whose counsel, despite being legally immaterial, is the *only* reason the case currently is venued here. This factor also weighs in favor of transfer.

### D. The Public Interest Factors Strongly Favor Transfer

Whether to transfer venue also turns on consideration of "public interest" or "interest of justice" factors. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). These factors include "the congestions of the respective court dockets, prospects of a speedy trial, and the courts' familiarity with the applicable law." *RAH Color Techs., LLC,* 2018 U.S. Dist. LEXIS 6825, at *15.[4] Courts also consider the "desirability of resolving controversies in each locale; and the relation of each community to the occurrence at issue." *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 997 (N.D. Ill. 2012). The "interest of justice" factors "may be determinative in a particular case, even if the convenience of the parties and

---

[3] As with Xerox witnesses, Dr. Holub's convenience, as "the sole member of RAH," is "less important than the burden on non-party witnesses." *RAH Color Techs., LLC,* 2018 U.S. Dist. LEXIS 6825, *14. Nevertheless, the allegations in the *EFI* complaint assert that RAHCT regularly has traveled to California to meet with companies for the purpose of asserting infringement of its patents and demanding that such companies take a license to its patents and has entered into agreements with such companies, thereby deriving substantial revenue from entities in California. (Ward Decl. Ex. A at ¶ 7). For these reasons, Dr. Holub should not be heard to say that California is inconvenient.

[4] Because this case involves issues of federal patent law, each court's familiarity with the applicable law is presumed to be equal. *See, e.g., Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009) ("relative familiarity with the applicable law is not an issue in a patent infringement case, as the applicable law is the same nationwide.").

witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

The first public interest factor, speediness to trial, favors transfer. The prospect of a speedy trial is measured by the "median length of time from filing to disposition on the merits or the median time from filing to trial." *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 963 (N.D. Ill. 2013). According to the most recent federal court management statistics,[5] the Northern District of California has both a shorter filing-to-disposition and filing-to-trial period than the Northern District of Illinois:

|  | **Filing-to-Disposition** | **Filing-to-Trial** |
|---|---|---|
| Northern District of California | 7.2 months | 26.7 months |
| Northern District of Illinois | 8.5 months | 34.9 months |

Further, Illinois, as plaintiff's chosen venue, does not have an interest in resolving patent infringement allegations involving foreign companies. Instead, California has a greater interest than Illinois in resolving the allegations at issue here, as an overwhelming number of the print servers which form the central focus of the case were manufactured and supplied by EFI, which is headquartered in the Northern District of California. *See, e.g., Heil Co. v. Curotto Can Co.,* 2004 U.S. Dist. LEXIS 5183, at *3 (N.D. Ill. Mar. 30, 2004) ("Illinois does not have a strong interest in adjudicating a case between two companies neither of which is located in this State, and California has a greater interest in resolving a patent infringement action involving a company headquartered in California."). Indeed, the forum where the "research, development, testing, marketing, and sale of accused products occurred has a greater interest in the suit than other states." *Body Sci. LLC v.*

---

[5] U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics, December 31, 2017, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf, last visited 3.16.18.

13

*Boston Sci. Corp.*, 846 F. Supp. 2d 980, 998 (N.D. Ill. 2012).  That state, especially given the fact that EFI now has commenced a declaratory judgment action against RAHCT, is California. (Ward Decl. Ex. A).

RAHCT may argue that the case should remain in the Northern District of Illinois as a matter of judicial economy so that this District may resolve related litigation together. In particular, RAHCT has a pending infringement case against Adobe Systems, Inc. (ND IL Dkt. 1:18-cv-733) in this District.  However, the *Adobe* case is not relevant to the determination of this motion because it involves allegations concerning different products, developed by different entities. In contrast, the pending EFI declaratory judgment action in the Northern District of California, (Ward Decl. Ex. A (ND Cal. Dkt. 3:18-cv-01612)) is much more closely related than *Adobe;* it involves 3 patents common to this suit (the '870 Patent, the '008 Patent, and 897 Patent) and the exact same Fiery print servers accused in this case. *(Id.* at ¶ 1). And, because RAHCT already has asserted a claim against Xerox alleging that EFI's products infringe these patents, we would expect RAHCT to counterclaim for infringement against EFI under some, if not all, of the other patents asserted here. Thus, the EFI-related claims ultimately will be adjudicated in the Northern District of California anyway. As such, the public interest factors also uniformly warrant transfer.

## CONCLUSION

For the foregoing reasons, Xerox respectfully requests that this Court transfer this case to the Northern District of California.

Dated: March 16, 2018          Respectfully submitted,

WARD GREENBERG HELLER & REIDY LLP

      s/ Eric J. Ward
Eric J. Ward (*Admitted Pro Hac Vice*)
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
eward@wardgreenberg.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

David Eiseman (*Admitted Pro Hac Vice*)
50 California Street 22nd Floor
San Francisco , CA  94111
(415) 875-6600
davideiseman@quinnemanuel.com

Michelle Schmit
500 W Madison St.
Room 2450
Chicago , IL  60661
(312) 705-7400
michelleschmit@quinnemanuel.com